Edward A. Piper, OSB No. 141609
ed@glenmorrielaw.com
GLENMORRIE LAW LLC
5300 Meadows Road, Suite 200
Lake Oswego, Oregon 97035
Tel. (971) 236-1154

*Attorney for Defendant Kathryn Gail Grant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAVID WAYNE BABCOCK,<br><br>Plaintiff,<br><br>v.<br><br>KATHRYN GAIL GRANT,<br><br>Defendant. | Case No. 3:26-cv-01857-JR<br><br>**DEFENDANT KATHRYN GAIL GRANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Request for Oral Argument |

## LR 7-1 CONFERRAL STATEMENT

Pursuant to LR 7-1(a), counsel for Defendant Kathryn Gail Grant ("Defendant") conferred by telephone with *pro se* Plaintiff David Wayne Babcock ("Plaintiff") on November 11, 2026. The parties were unable to resolve the dispute presented in this motion.

## MOTION

Pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6), Defendant moves to dismiss each of the two claims that Plaintiff brings against her in his First Amended Complaint. (*See* ECF No. 17 (the "FAC").)

# MEMORANDUM

## I. INTRODUCTION

Plaintiff has accused Defendant of violating the federal Stored Communications Act (the "SCA") and Oregon common law. However, even accounting for Plaintiff's *pro se* status, the FAC fails to allege any plausible federal claim for relief. On those grounds, and because the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim, the FAC should be dismissed. Additionally, because the FAC demonstrates on its face that any further amendment would be futile, the Court should dismiss Plaintiff's claims without leave to amend.

## II. BACKGROUND

Plaintiff and Defendant were married until August 2024. *See Kathryn Gail Grant and David Wayne Babcock* (Or. Cir. Ct. No. 23DR16872).

Proceeding *pro se*, Plaintiff commenced this action on September 8, 2026. (ECF No. 1.) Originally, Plaintiff brought three claims, the first two of which arose under the SCA and the federal Wiretap Act. (*Id*. ¶¶ 26-41.) The third claim alleged intrusion upon seclusion under Oregon common law. (*Id*. ¶¶ 42-49.) Plaintiff's claims were (and remain) based upon Defendant's allegedly improper access to Plaintiff's emails, as described further below. (*See id*. ¶¶ 8-16, 26-49.)

Defendant moved to dismiss the original complaint. (ECF No. 13.) In response, Plaintiff filed the FAC, which now is the operative pleading. (*See* ECF Nos. 16-17.) In the FAC, Plaintiff dropped his Wiretap Act claim, the dismissal of which he consented to in his response to Defendant's first motion to dismiss. (*See* ECF No. 15 at 3.) Now, only the SCA claim and the intrusion upon seclusion claim remain. (FAC ¶¶ 34-48.)

Plaintiff's SCA and intrusion upon seclusion claims are based upon the same core facts as in his original complaint. Plaintiff alleges in the FAC that he "maintains a private, personal email account" with Comcast and that "[o]n one or more occasions . . . Defendant intentionally accessed the Comcast Account without authorization." (*Id.* ¶¶ 7, 14.) "During that access," the FAC asserts, "Defendant opened and read emails in the Comcast Account" and then "forwarded multiple of Plaintiff's personal emails from the Comcast Account to" Defendant's separate Gmail address. (*See id.* ¶¶ 15-17.)

As Defendant pointed out in her original motion to dismiss, Plaintiff's SCA claim had (and still has) a fatal legal flaw: "for an e-mail to be stored for purposes of backup protection [under the SCA], there must be a second, backup copy of the message[,]" and "Plaintiff's complaint identifies no such backup copy of any email message stored in any second place." (ECF No. 13 at 6 (internal quotation marks and citations omitted); *see also* ECF No. 15 at 7-8 (describing the purpose of the FAC's amendment to the SCA claim).)

The FAC attempts to avoid that problem by pointing to Defendant's Gmail account, *i.e.*, the email account to which Defendant forwarded Plaintiff's messages after accessing them on the Comcast account. The forwarded messages in the Gmail account, says Plaintiff, are the "second, backup" copies required by the SCA. As the FAC puts it:

///

///

///

///

///

///

> 17. The emails that Defendant opened, read, and forwarded had been delivered to the Comcast Account before Defendant accessed them and remained stored on Comcast's servers when she did.
>
> 18. The Gmail Account is hosted by Google. The forwarded copies of Plaintiff's emails are stored on Google's servers in the Gmail Account.
>
> 19. *The emails that Defendant forwarded are therefore stored in two places: on Comcast's servers in the Comcast Account and on Google's servers in the Gmail Account*. Plaintiff is not aware of any other place where those emails are stored.

(FAC ¶¶ 17-19 (emphasis added); *see also id*. ¶ 16 (the "Gmail Account" is an email account that "belongs to Defendant").)

As in the original complaint, the intrusion upon seclusion claim also is based upon Defendant's allegedly improper access to Plaintiff's emails, as well as certain vague allegations pertaining to Plaintiff's credit report, "personal information," and "phone record."[1] (*See, e.g.*, *id.* ¶¶ 43-44.)

## III. ARGUMENT

### A. Legal standards.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

---

[1] Those additional allegations appear not to have anything to do with Plaintiff's SCA claim, which, according to the FAC, turns only on Defendant's allegedly wrongful access to Plaintiff's emails. (FAC ¶¶ 34-41.) Nor, in any event, do any of those additional allegations involve an "electronic communication" of the sort that the SCA requires in order for a plaintiff to state a claim. 18 U.S.C. § 2701(a); *see also* 18 U.S.C. §§ 2510(12), 2711(1) (defining the phrase "electronic communication" for purposes of the SCA).

action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (cleaned up).

"Although pro se pleadings are construed liberally, a pro se plaintiff still must present factual allegations sufficient to state a plausible claim for relief." *White v. Dietrich*, 2024 WL 4426002, at *1 (D. Or. Sept. 26, 2024), *appeal dismissed*, 2024 WL 5289191 (9th Cir. Nov. 20, 2024) (internal citations omitted). "Even when liberally construing a pro se complaint . . . the court may not supply an essential element that was not pled." *Bolukgiray v. United States Citizenship & Immigr. Servs.*, --- F. Supp. 3d. ----, 2026 WL 2227809, at *3 (N.D. Cal. Aug. 3, 2026) (citing *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc)); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992), *as amended* (Oct. 9, 1992) (same).

**B. Plaintiff fails to allege that Defendant accessed any email communication while it was in "electronic storage" within the meaning of the SCA.**

Under the SCA, a plaintiff must allege that an electronic communication was improperly accessed "while . . . in electronic storage[,]" a phrase which the SCA defines in an unexpectedly narrow way. 18 U.S.C. § 2701(a); *see also* 18 U.S.C. § 2510(17) (defining that phrase). Here, the FAC fails to allege any facts plausibly suggesting that any of Plaintiff's emails were in such "electronic storage" at the time of Defendant's allegedly improper access. In fact, the FAC's description of Plaintiff's email account appears to allege precisely the opposite. In any event, Plaintiff's SCA claim falls short.

"In the SCA, Congress created a private cause of action against one who 'intentionally accesses without authorization [or intentionally exceeds an authorization to access] a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic

storage in such system.'" *Clare v. Clare*, 982 F.3d 1199, 1202 (9th Cir. 2020) (quoting 18 U.S.C. § 2701(a)(1), and citing 18 U.S.C. § 2707(a)). For SCA purposes, "electronic storage" means either: "(A) any temporary, intermediate storage of a wire or electronic communication *incidental to the electronic transmission thereof*;" or "(B) any storage of such communication by an electronic communication service *for purposes of backup protection* of such communication[.]" 18 U.S.C. § 2510(17) (emphases added); *see also* 18 U.S.C. § 2711(1) (incorporating the preceding definition of "electronic communication" into the SCA).

Because the FAC alleges that Defendant forwarded already-sent emails, Plaintiff fails as a matter of law to allege electronic storage "incidental to the electronic transmission" of any such message under subsection (A) above. *See, e.g.*, *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1143 (E.D. Cal. 2021) ("Courts interpreting subsection (A) have held that, because this subsection only applies to messages in 'temporary, intermediate storage,' its coverage is limited to messages that are in transit but which have not yet been delivered to their intended recipient." (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004), and *In re Doubleclick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001))).

Nor does Plaintiff appear to contend as much. The original complaint seemed to invoke not subsection (A) but rather subsection (B), arguing that Plaintiff's email account is itself a form of "backup protection" under the SCA. (*See* ECF No. 1 ¶ 28.) The FAC is less clear, but nowhere does it suggest that subsection (A) has any application in these circumstances. Instead, the FAC appears to argue that the transmission of Plaintiff's emails from the Comcast account to the Gmail account somehow transforms the former account into a kind of backup mechanism. (*See, e.g.*, FAC ¶¶ 17-19.)

The problem with both of those possible arguments arises from what the Ninth Circuit has called "a straightforward premise: for an e-mail to be stored 'for purposes of backup protection,' there must be a second, backup copy of the message." *Clare*, 982 F.3d at 1202 (citing *Theofel*, 359 F.3d at 1075, 1077); *see also* Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1215 (2004) ("[T]he key is the provider's role with respect to a particular copy of a particular communication, rather than the provider's status in the abstract.").[2]

The FAC identifies no "backup copy" of any email message stored in any "second" place at the time of Defendant's allegedly improper access. Instead, as far as the FAC reveals, prior to that allegedly improper access, Plaintiff's emails were stored solely on Comcast-controlled servers. (*See, e.g.*, FAC ¶ 17 ("The emails that Defendant opened, read, and forwarded had been delivered to the Comcast Account before Defendant accessed them and remained stored on Comcast's servers when she did."); *id.* ¶ 19 (apart from the Comcast servers, and the Google servers to which Defendant forwarded the emails after accessing them, "Plaintiff is not aware of any other place where those emails are stored").) Thus, Plaintiff's allegations fall within the Ninth Circuit's "observation in *Theofel* that '[a] remote computing service might be the only place a user stores his messages; in that case, the messages are not stored for backup purposes.'" *Clare*, 982 F.3d at 1203 (quoting *Theofel*, 359 F.3d at 1077).

Notwithstanding *Theofel*'s "observation" above, the Ninth Circuit has suggested — a little puzzlingly — that it actually has yet to decide "whether e-mail messages maintained only on a web-based platform can fall within the purview of subsection (B)." *Id.* (collecting cases

---

[2] A number of courts, including the Ninth Circuit, have invoked Professor Kerr's article in SCA cases. *See, e.g.*, *United States v. Rosenow*, 50 F.4th 715, 730 (9th Cir. 2022); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).

addressing that question). *Theofel* itself seems all but to answer that question in the negative, and other courts have done just that. Of the handful of cases that *Clare* invoked,[3] the only one from within the Ninth Circuit came to that very conclusion. *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1044 (N.D. Cal. 2018) ("[T]he email on the ISP's server is not 'for purposes of backup protection' because there is no other version of the email that is being backed up." (citing *United States v. Weaver*, 636 F. Supp. 2d 769, 772 (C.D. Ill. 2009))); *see also Clare*, 982 F.3d at 1203 (citing *Cline*, 329 F. Supp. 3d at 1044).

So too has the Eighth Circuit, which held that neither the "drafts" folder nor the "sent" folder in a Gmail account performs a backup function for SCA purposes. *See Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 839-42 (8th Cir. 2015) ("We hold that once Anzaldua successfully sent the email to Holland, as he alleged he did, the copy Gmail retained on its server as a sent message did not perform a backup function. . . . Accordingly, neither the draft of the Dr. Tan email nor the sent Holland email falls within the protection afforded by the SCA."). An Illinois federal court likewise held that "[p]reviously opened emails stored by Microsoft for Hotmail users are not in electronic storage" because "[u]sers of web-based email systems, such as Hotmail, default to saving their messages only on the remote system." *See Weaver*, 636 F. Supp. 2d at 772-73. Other district courts have come to similar conclusions. *See Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 607 (S.D.N.Y. 2015), *opinion reinstated on*

[3] *Clare* also cited *Hately v. Watts*, 917 F.3d 770, 797 (4th Cir. 2019), which "conclude[d] that previously delivered and opened emails stored by an electronic communication service are stored for 'purposes of backup protection,' under the plain and ordinary meaning of those terms." *See also Clare*, 982 F.3d at 1203. As a technological matter, *Clare* "agree[d] with [*Hately*'s] rejection of any distinction between the protection afforded to 'service copies,' *i.e.*, those immediately accessible to a user, and 'storage copies,' *i.e.*, those less conveniently accessible." *Clare*, 982 F.3d at 1203 (citing *Hately*, 917 F.3d at 796 n.8). But as to "whether e-mail messages maintained only on a web-based platform can fall within the purview of subsection (B)[,]" *Clare* neither adopted nor rejected *Hately*: "We cannot answer this question today." *See id.*

*reconsideration*, 2015 WL 6509112 (S.D.N.Y. Oct. 28, 2015) ("Because communications downloaded to a user's computer terminal are neither stored on a temporary basis 'incident to [their] electronic transmission' nor stored 'by an electronic communication service for purposes of backup protection of such communication,' the plaintiff's allegations that the RSI Defendants tampered with the emails after they were initially downloaded fails to state a claim." (citing *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 337 (D.D.C. 2011))).

The FAC's attempt at reformulating the SCA claim — *i.e.*, Plaintiff's theory that his emails were in "electronic storage" for SCA purposes because Defendant forwarded them to her Gmail account after accessing them — is without merit. For one thing, that new theory is at odds with the SCA's plain text. The SCA prohibits unauthorized access to an electronic communication "*while* it is in electronic storage" within the meaning of the statute. 18 U.S.C. § 2701(a) (emphasis added). In other words, the relevant communication must already be in "electronic storage" at the time of the allegedly improper access. *See Petrosky v. Allstate Fire & Cas. Ins. Co.*, 141 F. Supp. 3d 376, 387 (E.D. Pa. 2015) (noting that the term "while" ordinarily denotes a "temporal restriction" (internal quotation marks and citations omitted)). Here, Plaintiff's emails existed in only one place (the Comcast account) at the time of Defendant's allegedly improper access, which, explained above, is insufficient to establish "electronic storage" for SCA purposes. (*See* FAC ¶¶ 14-17.) According to the FAC, it was only "[a]fter opening and reading" the emails in the Comcast account — *i.e.*, after the allegedly improper access occurred — that the copies in Defendant's Gmail account came into being. (*See id.* ¶ 16.) Thus, those later-created copies have no bearing on the question of whether Defendant earlier accessed certain messages "while" they were "in electronic storage" as defined in 18 U.S.C. §

2510(17). To conclude otherwise would be neither logical nor consistent with the temporal limitation reflected in the SCA's use of the word "while."

For another thing, the FAC contains no facts suggesting that either Plaintiff's Comcast account or Defendant's Gmail account was at any point storing any forwarded message "for purposes of backup protection of such communication[.]" 18 U.S.C. § 2510(17)(B). Indeed, given the FAC's contention that the forwarding never should have occurred at all, it is difficult to imagine how Plaintiff reasonably could argue as much.

For yet another thing, Plaintiff's theory would eviscerate the limitations to the SCA's scope that are reflected in its narrow definition of "electronic storage." *See* 18 U.S.C. § 2510(17). If the mere act of forwarding an email were sufficient to establish "electronic storage," the SCA would transmogrify into "a catch-all statute designed to protect the privacy of stored Internet communications[,]" rather than (as Congress intended) a law "narrowly tailored to provide a set of Fourth Amendment-like protections for computer networks." *See* Kerr, *A User's Guide to the Stored Communications Act*, 72 GEO. WASH. L. REV. at 1214.

*

Applying the SCA to today's technology can be a messy business: "When it passed the Stored Communications Act [in 1986], Congress had as reference a technological context very different from today's Internet-saturated reality." *In re Microsoft Corp.*, 829 F.3d 197, 205-06 (2d Cir. 2016), *vacated and remanded on other grounds sub nom. United States v. Microsoft Corp.*, 584 U.S. 236 (2018). At bottom, though, a plaintiff claiming a violation of the SCA still must allege something more than boilerplate to suggest plausibly that the relevant communications were in "electronic storage" within the meaning of the statute. *See Bayani v. T-Mobile USA, Inc.*, 2023 WL 6959287, at *10 (W.D. Wash. Oct. 20, 2023) ("Without more information on how [the

technologies at issue] align with the statutory definition of 'electronic storage,' Bayani has failed to allege a plausible claim under 18 U.S.C. § 2702(a)(1)."). Plaintiff fails to do so, which means his SCA claim should be dismissed.

**C. The Court should dismiss Plaintiff's SCA claim without leave to amend.**

"Although leave to amend should be given freely, denying leave is not an abuse of discretion if it is clear that granting leave to amend would have been futile." *In re Cloudera, Inc.*, 121 F.4th 1180, 1189–90 (9th Cir. 2024) (internal quotation marks and citations omitted). It is true that a "pro se plaintiff should ordinarily be given leave to amend unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Saenz v. Ledbetter*, 2017 WL 2626987, at *6 (C.D. Cal. June 15, 2017) (quoting *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988)). "'By the same token, however, a pro se complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint.'" *Id.* (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see also DeFrancesco v. Arizona Bd. of Regents*, 2021 WL 4170673, at *2 (D. Ariz. Sept. 14, 2021), *aff'd*, 2023 WL 313209 (9th Cir. Jan. 19, 2023) (same). "If the deficiencies in a complaint can only be cured by amendments that 'contradict the allegations in the original complaint,' leave to amend would be futile." *Saenz*, 2017 WL 2626987, at *6 (quoting *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011)).

Here, Plaintiff has pleaded himself out of court. In both his opposition to the original motion to dismiss and the FAC itself, Plaintiff says expressly that, apart from the Comcast and Gmail accounts, he "is not aware of any other place where those emails are stored." (FAC ¶ 19; *see also* ECF No. 15 at 8 (same).) As explained above, the Comcast and Gmail accounts are insufficient to establish "electronic storage" for SCA purposes. And if Plaintiff cannot identify

any other location in which the messages are stored, then he cannot point to any "second, backup copy" of any relevant message. *Clare*, 982 F.3d at 1202 (citing *Theofel*, 359 F.3d at 1075, 1077). In other words, Plaintiff's current allegations make it "clear that granting leave to amend would [be] futile" in these circumstances. *See In re Cloudera*, 121 F.4th at 1189–90 (internal quotation marks and citations omitted).

**D. The Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.**

"When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." *Artis v. D.C.*, 583 U.S. 71, 74 (2018) (citing 28 U.S.C. § 1367(c)(3)); *see Hernandez v. Blewett*, 2023 WL 4931292, at *4 (D. Or. Aug. 2, 2023) (doing so). "When, as here, all claims arising under federal law are dismissed in the early stages of a case, 'the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — weigh in favor of declining to exercise jurisdiction over the remaining state law claims.'" *Blumenkron v. Hallova*, 568 F. Supp. 3d 1093, 1115 (D. Or. 2021), *aff'd sub nom. Blumenkron v. Multnomah Cnty.*, 91 F.4th 1303 (9th Cir. 2024) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

As explained above, Plaintiff has failed plausibly to allege any federal claim. Nor does the FAC suggest any other plausible basis for federal jurisdiction. Thus, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for intrusion upon seclusion. The fact that this case has not progressed beyond the pleadings provides an especially

///

///

///

good reason for it to do so. *See id*. So too does the nature of the remaining privacy claim, which presents an issue of Oregon common law better resolved (if at all) by an Oregon court.[4]

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that her motion to dismiss be granted in full. Defendant would not object to an order appointing counsel to represent Plaintiff for purposes of this motion on a limited-scope basis.

Dated this 17th day of November, 2026.

*s/Edward A. Piper*
Edward A. Piper, OSB No. 141609
ed@glenmorrielaw.com

*Attorney for Defendant Kathryn Gail Grant*

[4] Namely, the tort of intrusion upon seclusion presents "classic state [law] issues" that an Oregon state court should decide in the first instance. *Just. v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1144 (D. Or. 2015), *aff'd*, 720 F. App'x 365 (9th Cir. 2017) (noting that "the values of federalism and comity weigh in favor of this Court declining to exercise supplemental jurisdiction" where the remaining "[c]ommon law claims . . . touch upon classic state [law] issues"); *see also Mauri v. Smith*, 324 Or. 476, 483 (1996) ("Although courts in other jurisdictions often use the phrase 'intentional intrusion' in this context, few define it."); *Reed v. Toyota Motor Credit Corp.*, 301 Or. App. 825, 831 (2020) (in an intrusion upon seclusion case involving digital technology, noting that "the common law adapts to the times to meet the needs of society").